IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| JOE FEEHAN, LUNA AZIZ, AND LEGENDAIRY MILK, LLC )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>JANE DOE a.k.a. "DENISE SCHWARTZ," )<br>KRYSTAL RHODEN a.k.a. KRYSTAL )<br>DUHANEY, and MILKY MAMA, LLC )<br>)<br>Defendant. ) | Civil Action No. 1:19-cv-01169-RP |

**DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO DISMISS AND ALTERNATIVE MOTION TO TRANSFER VENUE**

Defendants file this reply in support of their Motion to Dismiss and Alternative Motion to Transfer Venue (Dkt. 10) and show as follows:

Plaintiffs' Response (Dkt. 14) does nothing to change the undeniable fact that the allegedly defamatory posts giving rise to this dispute, all of which were made by Krystal Duhaney using her anonymous screen name Denise Schwartz, hardly reference Texas and, more importantly, do not target this state or its citizens over the citizens of other states. In fact, the evidence attached to Plaintiffs' Response proves that citizens of other states were overwhelmingly the recipients of the supposedly defamatory statements with which Plaintiffs take issue. This evidence proves specific jurisdiction is lacking, and the Court should thus dismiss this case.

## I.     Defendants Are Not Subject to Specific Personal Jurisdiction in Texas[1]

Plaintiffs' claims in this case revolve entirely around Krystal Duhaney's allegedly defamatory "Denise Schwartz" posts on various social media sites. *See* Third Am. Compl. ("TAC"; Dkt. 7) ¶¶ 19-86, 38-69. To establish specific personal jurisdiction based on this alleged online defamation, Plaintiffs must show that the statements which give rise to Plaintiffs' causes of action, i.e., the supposedly defamatory Denise Schwartz statements, were "aimed at or directed to Texas." *Clemens v. McNamee*, 615 F.3d 374, 380 (5th Cir. 2010).

It is not enough that the subject matter of the statements "relate to or implicate" the forum, as Plaintiffs suggest, but rather, the forum itself must "be the focal point of the story." *Id.* at 379; *Revell v. Lidov*, 317 F.3d 467, 469-70 (5th Cir. 2002) (no jurisdiction where defamatory statements did not refer to the plaintiff's Texas activities and were not directed to Texas readers as opposed to readers from other states). Here, Plaintiffs have not and cannot meet their jurisdictional burden.

---

[1] Plaintiffs dot not contend general jurisdiction exists and thus concede that issue.

1

First and most importantly, none of the allegedly defamatory statements giving rise to Plaintiffs' claims target Texas or its citizens. The statements in Exhibit A to the TAC that actually give rise to Plaintiffs' claims do not even reference Texas, and even the few stray references to Texas contained in the attachments to Plaintiffs' Response are merely taken from posts to various Facebook pages for breastfeeding mothers that themselves neither focus on Texas nor target its residents. Dkt. 10 at 10-11.

In fact, review of the evidence attached to Plaintiffs' Response reveals the opposite—these Schwartz posts, most of which do not even appear to give rise to Plaintiffs' claims, received responses not from Texas citizens, but from users who identified themselves as living in New England, Ohio, North Carolina, and Mississippi. *See* Dkt. 14-8, Ex. A-6 at 3, 4 (responses from users in New England and Ohio); Dkt. 14-9, Ex. A-7 at 3, 4 (responses from users in North Carolina and Mississippi). Plaintiffs' contention that Duhaney was touting her products to Texans or promoting quick shipping to Texas residents is similarly belied by the evidence, which reveals that Duhaney identified her anonymous pseudonym as living in both Texas and California (Dkt. 14-8, Ex. A-6 at 4, 5) and discussed shipping speeds with a resident of Mississippi (Dkt. 14-9, Ex. A-7 at 3, 4). Plaintiffs simply repeating the assertion that Duhaney targeted Texas does not make it true, and the evidence proves it is false. Further, the mere fact that a miscellaneous Schwartz post occasionally referenced Texas is insufficient to confer specific jurisdiction—a much more direct targeting by the defamatory statements which gave rise to Plaintiffs' claims is required and is lacking, requiring dismissal. *See McNeil v. Biaggi Prods., LLC*, No. 3:15CV751, 2017 WL 2625069, at *8 (E.D. Va. 2017); *Gorman v. Jacobs*, 597 F. Supp. 2d. 541, 548 (E.D. Penn. 2009).

Second, Plaintiffs' repeated contention that specific jurisdiction exists because the brunt of the harm caused by Duhaney's posts was felt in Texas has been soundly rejected by the Fifth

Circuit, which has explained that "the plaintiff's residence in the forum, and suffering of harm there, will not alone support jurisdiction." *Revell*, 317 F.3d at 472-76; *Clemens*, 615 F.3d at 380, n.2. Any other rule would eradicate the specific jurisdiction inquiry in defamation cases, ignoring binding precedent in the process. *Id.*

Third, Plaintiffs' attempt to conjure specific jurisdiction by shifting focus from the Schwartz statements to various irrelevant activities, such as Duhaney's emailing with Plaintiffs' counsel and unrelated "interactions" online by a then non-Milky Momma employee (Khadijah Artis-Santiago), also fails to support jurisdiction. Most fundamentally, neither of these supposed Texas contacts support personal jurisdiction as the Court is to "look only to the contact out of which the cause of action arises" for determining specific jurisdiction. *Revell*, 317 F.3d at 469-70. It is the Denise Schwartz posts that give rise to Plaintiffs' claims, *see* TAC ¶¶ 19-86, 38-69, and it is undisputed that these posts were made by Duhaney from computers in California. *See* Motion at 4; Resp. at 3-4; Dkt. 10-9, Decl. of K. Duhaney ¶¶ 9-11; **Ex. A**, Decl. of K. Duhaney ¶¶ 3-9.

Duhaney providing Plaintiffs' counsel a Texas phone number to contact her is unrelated to the supposed defamation for which Plaintiffs have asserted claims, as are the "interactions" by Ms. Artis-Santiago. *See* TAC ¶¶ 20-26, 38-69; Dkt. 7-1 (Ex. A to TAC). And even if the Artis-Santiago "interactions," which are neither alleged to be defamatory nor which are defamatory on their face, did somehow give rise to Plaintiffs' claims, which they do not, they would nonetheless be insufficient to establish personal jurisdiction over the entirely California-based Defendants since none of Artis-Santiago's posts discuss Plaintiffs' products or even mention Texas and could not be attributed to Defendants in any event. *See* Dkt. 14-17, Ex. A-15; Dkt. 14-18, Ex. A-17.[2]

---

[2] Although Ms. Artis-Santiago's "interactions" are entirely irrelevant for jurisdictional purposes, Defendants note that Plaintiffs are mistaken as to Artis-Santiago's relationship with Milky Mama. Prior to Artis-Santiago becoming a Milky Mama employee in June 2019, Dkt. 10-9 ¶ 12, she served as a volunteer administrator of the Milky Mama

Finally, as though this issue were not already clear enough, even Plaintiffs' own cases support dismissal. In *Hawbecker v. Hall*, for example, the defendant was subject to personal jurisdiction in Texas because the allegedly defamatory Facebook posts in that case (1) were expressly directed to the plaintiff's Texas-based friends, family members, and employer; and (2) stated, for example, that the plaintiff "lives and works in San Antonio Texas so please pass the word on to any one [sic] that you may know there." *Hawbecker v. Hall*, 88 F. Supp. 3d 723, 729 (W.D. Tex. 2015). These are the sorts of repeated directing of messages to Texas readers specifically along with references to a plaintiff's Texas activities that must exist for jurisdiction to flow from alleged online defamation, all of which are lacking here. *Revell*, 317 F.3d at 469-70.

Similarly, in *Next Techs., Inc. v. ThermoGenisis*, the plaintiff was able to establish jurisdiction over certain individual defendants in large part because the co-defendant corporate entity they worked for, and which was represented by the same counsel, had already conceded that personal jurisdiction existed based on the exact same allegedly defamatory online activity. No. A-15-CV-00225-LY-ML, 2015 WL 6554421, at *4 (W.D. Tex. Oct. 28, 2015). Further, the allegedly defamatory statements in *Next Techs* were made in an apparent attempt to "pressure the [defamed] competitor into reconsidering a proposed business combination" between the plaintiff and defendants. *Id.* That is, the parties had a proposed business dealing in Texas, and the alleged defamation was intended to result in a formalized business agreement between the parties. *Id.* Nothing even close to these sorts of circumstances exist here.

---

Support Group on Facebook and was an independent lactation consultant who used Milky Mama's website as a portal for lactating mothers to find her independent consultation services. **Ex. A**, Decl. of K. Duhaney ¶¶ 4-9. Plaintiffs' evidence actually confirms this, as they show that Artis-Santiago was not an affiliated Milky Mama consultant, but rather a general consultant that could be booked through Milky Mama's website. *Id.*; *see also* Dkt 14-25, Ex. C-2 at 4 (Artis-Santiago post stating "[T]his is me[]" with screenshot of booking page for lactation consultants in which Artis-Santiago circled that she is an unaffiliated and unnamed certified lactation consultant). Milky Mama provides a mechanism for unaffiliated professionals in this space to offer their services, much akin to how one might find a professional on websites like www.Angieslist.com. *See* **Ex. A**. In the same way one might find a plumber on Angie's List, the plumber would neither work for nor represent Angie's List itself.

4

This case is instead far more similar to the vast majority of online defamation cases, in which (1) the allegedly defamatory statements are projected into the void of social media sites like Facebook and Instagram, (2) the statements are not specifically directed at the citizens of the plaintiff's forum state and do not reference the plaintiff's forum-specific activities, and (3) any resulting litigation should only be brought where the defendant resides as that is where personal jurisdiction is proper. *See, e.g.*, *Siddhar v. Varadharajan*, No. CIV.A. 4:13-CV-1933, 2014 WL 2815498, at *4 (S.D. Tex. June 20, 2014) (no jurisdiction where "a majority of the allegedly defamatory postings and emails [] included in [the] complaint make no mention of Texas, nor [plaintiff's] activities in Texas, and do not target Texas readers specifically"); *Xenex Disinfection Services LLC v. Deal*, No. SA-16-CV-232-XR, 2016 WL 3033779, at *2-3 (W.D. Tex. May 25, 2016) (no jurisdiction where "communications sent by Twitter and [on other online forums] were not social media pages specifically targeted to Texas residents"); *Binion v. O'Neal*, 95 F. Supp. 3d 1055, 1060 (E.D. Mich. 2015) (same); *McNeil*, 2017 WL 2625069 at *8 (same); *Gorman*, 597 F. Supp. 2d. at 548 (same). Like the courts in these cases, this Court should dismiss Plaintiffs' case for lack personal jurisdiction.[3]

## II.   Jurisdictional Discovery is Not Warranted and Would Only Result in Delay

In an attempt to avoid dismissal on the undisputed relevant jurisdictional facts (Duhaney's allegedly defamatory posts as Denise Schwartz), Plaintiffs seek jurisdictional discovery concerning the extent to which Duhaney "intended to" target Texas and Artis-Santiago's irrelevant conduct. Plaintiffs' request should be denied as seeking irrelevant information that could in no event support jurisdiction.

---

[3] For many of the same reasons, it would be constitutionally unfair to force Defendants to defend themselves in this Court, where the sole contact with this state is merely Plaintiffs' residency here. *See* Dkt. 10 at 14.

5

Jurisdictional discovery should only be allowed where a plaintiff has (1) made a "preliminary showing of jurisdiction," (2) specified what "significant facts" the discovery sought could add, and (3) explained how those additionally discovered facts might support personal jurisdiction. *Brock v. Espinet*, No. SA-16-CV-685-XR, 2016 WL 6775448, at *3-4 (W.D. Tex. Nov. 15, 2016). None of these factors are met here. First, there is no dispute that Duhaney made the allegedly defamatory posts in question, and their content, which is already before the Court, clearly reveals that jurisdiction is lacking because the online statements neither target Texas citizens nor Plaintiffs' activities in Texas.

Second, Plaintiffs' questioning of Duhaney would not adduce any additional significant facts, as Duhaney has already sworn she did not know that Legendairy was based in Texas. *See Kelly v. Syria Shell Petroleum Dev. B.V.*, 213 F.3d 841, 856–57 (5th Cir.2000) (district court appropriately denied jurisdictional discovery in light of declarations submitted by defendants controverting plaintiff's contentions); *see also* Dkt. 10-9, Decl. of K. Duhaney. And even if Duhaney had "intended to" target Texas, which she did not, that could not change the most crucial and undeniable fact proven by Plaintiffs' own evidence: the allegedly defamatory online activity in this case did not target this state or its citizens, and the jurisdiction question has therefore already been answered. *Revell*, 317 F.3d at 469-70.

Finally, Plaintiffs fail to specify what facts it believes discovery of Artis-Santiago would uncover or how those facts would establish jurisdiction here. As discussed, her conduct is not and could never be pertinent to Plaintiffs' claims, which are based on the Denise Schwartz posts, which were all made by Duhaney, from computers based in California, on social media sites run from California, that themselves did not target Texas readers, and which the evidence shows actually impacted readers overwhelmingly from other states. Other than Plaintiff residing in Texas and

6

Duhaney identifying her online pseudonym as being from both Texas and California, this case has nothing to do with Texas, and this Court should deny Plaintiffs' request for jurisdictional discovery, which would only result in delay, re-briefing of these same issues, and additional congestion of this Court's already full docket. This case is ripe for dismissal and should be dismissed without delay.

**III.     Defendants Have Not Waived Their Personal Jurisdiction Objections**

Plaintiffs also argue that Defendants' jurisdictional objections, which have now been made twice in this Court, have somehow been waived by Duhaney posting online that her Denise Schwartz penname lived in Texas. *See* Dkt. 4, 10. First, Plaintiffs' own evidence undermines their false characterization of the facts, as Duhaney informed others who did not even live in Texas that Denise Schwartz lived in both Texas and California. Dkt. 14-8, Ex. A-6 at 4, 5. More importantly, Plaintiffs' argument is unsupported by authority as there has been no conduct that can amount to waiver of Defendants' jurisdictional objections.

In support of their position, Plaintiffs string together language from *Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, for the undisputed proposition that personal jurisdiction, unlike subject matter jurisdiction, may be waived. 456 U.S. 694, 703 (1982). In *Ireland*, the Supreme Court explained that personal jurisdiction is a waivable right, which may be waived, for example, by failing to timely object to personal jurisdiction, agreeing to jurisdiction in a contract with the plaintiff, or offensively using other court procedures, such as seeking affirmative relief prior to seeking dismissal for lack of personal jurisdiction. *Id.* at 703, 705. The Supreme Court went on to find that, in the case before it, the defendant's repeated failure to comply with the district court's discovery orders for production of information concerning jurisdiction warranted a sanction under Rule 37, namely, the acceptance of otherwise disputed facts that gave

rise to personal jurisdiction. *Ireland*, 456 U.S. at 698-699, 703-705. None of that applies here, and Plaintiffs provide no other supporting authority. Without meaningful authority backing Plaintiffs' wild theory, Plaintiffs' waiver argument collapses.

In any event, Defendants have objected to personal jurisdiction not once, but twice, and their mere act of timely removing this case from state court is not the sort of conduct that results in a waiver of jurisdiction. This Court has found that even failure to raise jurisdiction immediately post-removal in a 12(b) motion, which Defendants did twice, and merely alluding to it in an answer, protects against waiver. *See Bavikatte v. Polar Latitudes, Inc.*, No. A-15-CV-00437-LY-ML, 2015 WL 8489997, at *1, n. 1, 5-6 (W.D. Tex. Dec. 8, 2015) (also finding forum-based activity that did not give rise to plaintiff's claims irrelevant for jurisdictional purposes).

This is to say nothing of the fact that a finding of waiver based on Plaintiffs' unsupported theory would not only jeopardize Defendants' first amendment rights to anonymous free speech online, which are well-enshrined in the U.S. Constitution, *see In re Grand Jury Subpoena Issued to Twitter, Inc.*, No. 3:17-MC-40-M-BN, 2017 WL 9485553, at *4 (N.D. Tex. Nov. 7, 2017), but also eviscerate the minimum contact analysis required by both parties' repeated citation to binding precedent. Under Plaintiffs' theory of waiver, any post online where a party purports to reside in the forum state would result in personal jurisdiction there without regard to the actual contacts with the forum itself, analysis of which is required except for specific circumstances such as those set forth by the Supreme Court in *Ireland* and which do not exist here. *Clemens*, 615 F.3d at 380; *Revell*, 317 F.3d at 469-70.

Personal jurisdiction has neither been waived nor consented to. It is lacking, and this Court should so rule, dismissing this case.

**IV.     Alternatively, this Case Should be Transferred to the Central District of California**

8

If this Court finds that personal jurisdiction exists, it should exercise its discretion to transfer this case to the Central District of California. Not only are Defendants located in the Central District, but that is where the allegedly defamatory posts were made and where most of the evidence and witnesses would be found.

Here, the private interest factors weigh in favor of transfer because it will be easier to obtain proof in California, as that is where Defendants and the vast majority of Defendants' employees are located, and where Facebook and Instagram have their headquarters. Plaintiffs claim the location of Defendants is not a proper basis for transfer, but as most witnesses will be party witnesses, Defendants and their employees' locations are highly relevant. Plaintiffs also claim that because the Denise Schwartz account was deleted, Plaintiffs are unclear as to what relevant discovery Facebook and Instagram would possess, while at the same time and on the next page Plaintiffs' seek to obtain discovery over Arits-Santiago's Facebook activity as though it were relevant. In any event, any records Facebook or Instagram would have, which would undoubtedly be the core documentary evidence in this case, would come from California as that is where the custodian of records for both entities are found, as Plaintiffs concede in their initial disclosures and as further proven by Plaintiffs' own discovery efforts filed in state court, which show Plaintiffs subpoenaed Facebook in California. *See* **Ex. B**; *see also* Dkt. 1-3. Any witnesses from these social media platforms would similarly be found in California, and as third parties, their convenience is paramount. *Id.*

The public interest factors also weigh in favor of transfer in this case. Not only is it more judicially efficient for this case to be heard in the Central District of California, but California has an overwhelmingly stronger interest in this action, since Plaintiffs seek injunctive relief and all Defendants' allegedly defamatory conduct occurred in California, on social media platforms based

9

there. *Int'l Truck and Engine Corp. v. Dow-Hammond Trucks Co.*, 221 F. Supp. 2d 898, 905 (N.D. Ill Sept. 4, 2002). Plaintiffs' conclusory assertion that California has no local interest in this case does not change that fact that seeking to silence conversations of California citizens on California platforms would have a distinct impact in California over anywhere else. And Plaintiffs' have not shown that courts within the Central District of California are likely unfamiliar with Plaintiffs' garden variety common law or statutory claims—which will in fact likely be adjudicated pursuant to California law—or any other reason this case should remain here other than the mere fact that Plaintiff is based here.[4]

Plaintiffs' location in this District is the sole connection this case has to this forum, and it is not enough to anchor this case here, especially when the operative facts did not occur here. *Cadle Co. v. Keyser*, No. A-14-CV-758-LY, 2015 WL 764256, at *2 (W.D. Tex. Feb. 23, 2015). Transfer is thus proper.

## V. CONCLUSION

For the forgoing reasons, Defendants respectfully request that this Court dismiss this lawsuit for lack of personal jurisdiction, deny Plaintiffs' request for jurisdictional discovery, or alternatively transfer this case to the Central District of California.

---

[4] Plaintiffs' contention that their claims would be adjudicated pursuant to Texas law is remarkably misleading, as in support they merely cite to Defendants' prior motion to dismiss, which sought dismissal of Plaintiffs' Texas statutory DTPA claim. *See* Dkt. 4 at 14. Plaintiffs no longer assert that claim as it was frivolous. *See generally* TAC.

DATED: February 13, 2020				Respectfully submitted,

							Pillsbury Winthrop Shaw Pittman LLP


							/s/ Casey Low
							Ronald Casey Low
							Texas State Bar No. 24041363
							casey.low@pillsburylaw.com
							Benjamin L. Bernell
							Texas State Bar No. 24059451
							ben.bernell@pillsburylaw.com
							401 Congress Avenue, Suite 1700
							Austin, TX 78701-3797
							Phone: 512.580.9600
							Fax: 512.580.9601

							*Attorneys for Defendants*


## CERTIFICATE OF SERVICE

I hereby certify I caused a true and correct copy of the foregoing pleading to be served on all counsel of record electronically or by another manner authorized by Federal Rule of Civil Procedure 5(b)(2) on February 13, 2020.


				/s/ Casey Low
				Casey Low