IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

JOE FEEHAN, LUNA AZIZ, AND )
LEGENDAIRY MILK, LLC )          Civil Action No. 1:19-cv-01169-RP
                                            )
           Plaintiff, )
                                            )
           vs. )
                                            )
JANE DOE a.k.a. "DENISE SCHWARTZ," )
KRYSTAL RHODEN a.k.a. KRYSTAL )
DUHANEY, and MILKY MAMA, LLC )
                                            )
           Defendant. )

**DEFENDANTS' MOTION TO DISMISS, ALTERNATIVE MOTION TO TRANSFER VENUE, AND MOTION FOR MORE DEFINITE STATEMENT**

1

Defendants Jane Doe a.k.a. "Denise Schwartz," Krystal Rhoden a.k.a. Krystal Duhaney, and Milky Mama, LLC ("Defendants") move to dismiss this case for lack of personal jurisdiction under Rule 12(b)(2). Alternatively, Defendants seek transfer to the U.S. District Court for the Central District of California pursuant to 28 U.S.C. § 1404(a) and move for a more definite statement with respect to the Plaintiffs' Lanham Act claims under FED. R. CIV. P. 12(e).

## I.   INTRODUCTION

Plaintiffs Luna Aziz, Joe Feehan, and Legendairy Milk, LLC ("Plaintiffs") sued Defendants in Texas for supposedly defaming them on Facebook and Instagram. However, Defendants reside in California, all of the social media posts giving rise to Plaintiffs' claims were posted from California, and none of the supposedly defamatory posts giving rise to Plaintiffs' claims and contained in the attachments incorporated by reference in Plaintiffs' operative complaint target Texas readers specifically or this state. The only connection this case has to Texas is that Plaintiffs live here, which is not enough to support the exercise of either general or specific personal jurisdiction, and this case must therefore be dismissed.

Should this Court find that personal jurisdiction exists, Defendants alternatively request that the Court transfer venue to the Central District of California for convenience, the district where all of the material events in dispute occurred and nearly all of the evidence and witnesses will be found. In addition, Defendants alternatively request that this Court order Plaintiffs to provide a more definite statement of their Lanham Act claims, as it is unclear which provision(s) of the Lanham Act Defendants have allegedly violated.

## II.   BACKGROUND

### A.   <u>Procedural History</u>

On April 29, 2019, Plaintiffs filed suit in the 200th Judicial District Court of Travis County, initially only against a Jane Doe Defendant known online as "Denise Schwartz." *See* Dkt. 1-2.

After discovery from third parties and several amendments to their operative petition to include Defendants Duhaney and Milky Mama, Plaintiffs served Defendants with their Second Amended Petition on October 28, 2019. Dkt. 1; Dkt. 1-13 and 1-14. Plaintiffs timely removed this case to federal court on November 27, 2019. *Id.*

Defendants filed their Motion to Dismiss Plaintiffs' Second Amended Petition on December 4, 2019. Dkt. 4. In response, Plaintiffs filed their Third Amended Complaint ("TAC") on December 18, 2019, Dkt. 7, which mooted Defendants' first Motion to Dismiss. *See* Court's Text Order dated December 20, 2019. Defendants then filed their Motion to Dismiss Plaintiffs' Third Amended Complaint on January 23, 2020. Dkt. 10. Several months later, and while Defendants' Motion to Dismiss was pending before this Court, Plaintiffs filed a Motion for Leave to file a Fourth Amended Complaint, Dkt. 27, which this Court granted on September 18, 2020, thereby mooting Defendants' Motion to Dismiss. *See* Court's Text Order Granting Motion to Amend dated September 18, 2020; *see also* Court's Text Order Mooting Motion to Dismiss dated September 18, 2020. Defendants now file this Motion to Dismiss Plaintiffs' Fourth Amended Complaint, Dkt. 33 (Fourth Am. Comp.) ("FAC").

### B.    The Defendants' Lack of Connection to Texas

Defendant Duhaney resides in Artesia, California and is the owner and sole member of her business, Milky Mama, LLC. **Ex. B**, Decl. of K. Duhaney ¶ 3. Like Legendairy, Milky Mama produces and sells herbal supplements that aid lactating mothers with breast milk production. *Id.* ¶ 4. Milky Mama is a California limited liability company, and its principal place of business is in Rancho Cucamonga.[1] *Id.*

Although Plaintiffs filed suit in Texas, neither Duhaney nor Milky Mama have any

---

[1] Rancho Cucamonga sits within San Bernardino County, in the Central District of California. *See* https://www.cacd.uscourts.gov/jurisdiction.

meaningful presence in or connection to this state. For example, neither Duhaney nor Milky Mama have any offices, assets, bank accounts, or property in Texas, nor does Duhaney travel to Texas for work. **Ex. B**, Decl. of K. Duhaney ¶ 5. Milky Mama has six employees—five residing in and around Rancho Cucamonga and one in Oklahoma. *Id*. ¶ 6. None of Milky Mama's employees travel to Texas for work, and Milky Mama does not recruit employees in Texas. *Id.* Milky Mama has no subsidiaries or affiliates in Texas and manufactures none of its products here. *Id.* ¶ 7.

In addition to Milky Mama's commercial website, Duhaney runs the Facebook group "Official Milky Mama Lactation Support Group," which serves as a forum for breastfeeding mothers to obtain general information and support. *Id*. ¶ 8. Like most Facebook groups, membership in the Milky Mama Facebook group is open to anyone who agrees to follow the group's rules and is in no way limited to or focused on Texas residents. *Id*.

Duhaney exercises her First Amendment rights to anonymous free speech by posting on social media sites using the pen names "Denise Schwartz" and "Michelle Berkley," the online pseudonyms for the Jane Doe Defendant in this case. *Id.* ¶ 9. Duhaney created the Denise Schwartz account to discuss various products and services in the breastfeeding mother marketplace and educate other mothers online of her experiences using products and services in that space. *Id.* Additionally, Duhaney created the Michelle Berkley account to have a backup moderator account on the "Official Milky Mama Lactation Support Group" Facebook group, so that even if all other moderators were blocked by a Facebook user, Duhaney could use the Michelle Berkley account to take appropriate action to moderate the Facebook group, such as removing offensive posts. *Id.*

When posting from the Denise Schwartz and Michelle Berkley accounts, Duhaney did not target Texas-specific social media pages and she otherwise did not target this state or its citizens. *Id*.; *see also* TAC, Ex. A (confirming none of the online posts giving rise to Plaintiffs' claims were made in Texas-specific groups). Further, the allegedly defamatory statements giving rise to

Plaintiffs' claims, which are in Exhibit A to Plaintiffs' Third Amended Complaint and incorporated by reference into Plaintiffs' Fourth Amended Complaint, do not even contain specific references to Texas. *See* TAC, Ex. A; *see also* FAC ¶¶ 21-28, 31-34.

When creating the Denise Schwartz account, Duhaney selected her profile picture and cover photo simply by finding random stock image photos on Google images. **Ex. B**, Decl. of K. Duhaney ¶ 10. When creating the Michelle Berkley account, Duhaney selected her profile picture by finding a random stock image photo of a mother kissing her baby on Google images. *Id.* Duhaney did not select any of the profile picture photos or cover photos for the Denise Schwartz or Michelle Berkley accounts because she knew, believed, or otherwise suspected that the people in these photos resided in Texas, despite Plaintiffs' conclusory allegation that "upon information and belief," the family in the Denise Schwartz profile picture lives in Travis County, Texas. *Id.* ¶ 10; FAC ¶ 6.

Finally, Duhaney did not know Legendairy was based in Texas when making the pertinent social media posts giving rise to this dispute, nor did she know the whereabouts of individual Plaintiffs, Feehan and Aziz. **Ex. B**, Decl. of K. Duhaney ¶ 11. All the Denice Schwartz and Michelle Berkley posts giving rise to this suit were made from computers in California. *Id.* While Plaintiffs Aziz and Feehan allege they reside in Travis County, Texas, which is the principal place of business of Legendairy Milk, *see* FAC ¶¶ 1-2, Legendairy Milk sells its products throughout California, and specifically throughout the Central District of California. *See* **Ex. A-1** (screenshot of Legendairy's website showing that it sells products at multiple retail locations in the Central District of California).

C.   **Plaintiffs' Allegations**

Plaintiffs claim that Duhaney, through use of the Denise Schwartz and Michelle Berkley accounts and acting on behalf of Milky Mama, posted false statements concerning Milky Mama's

and Legendairy's products on Facebook and Instagram and included the allegedly defamatory posts in Exhibit A to their Third Amended Complaint, incorporated by reference into their Fourth Amended Complaint. *See* FAC ¶¶ 8-9, 16-28, 30-36; TAC, Ex. A. Plaintiffs claim these social media posts amount to defamation, libel, and business disparagement, and also violate the Lanham Act. 15 U.S.C. § 1051 *et seq.*; *see* FAC ¶¶ 46-77.

## III.   ARGUMENT

### A.   <u>Personal Jurisdiction Over Defendants is Lacking, Requiring Dismissal</u>

This Court should dismiss Plaintiffs' complaint for lack of personal jurisdiction pursuant to Rule 12(b)(2) because no Defendant has contacts sufficient to support the exercise of either general or specific jurisdiction over them. The Defendants are California residents without continuous and systematic contacts with Texas, negating general jurisdiction. None of the Defendants' posts giving rise to Plaintiffs' claims targeted Texas, thus negating specific jurisdiction.

#### 1.   <u>Legal Standard</u>

The plaintiff bears the burden of establishing personal jurisdiction over non-resident defendants. *Siddhar v. Varadharajan*, No. CIV.A. 4:13-CV-1933, 2014 WL 2815498, at *2 (S.D. Tex. June 20, 2014). Only a plaintiff's uncontroverted allegations are taken as true, and courts may consider evidence in evaluating the veracity of a plaintiff's jurisdictional allegations. *Id.* (collecting Fifth Circuit cases). But a court need not credit conclusory allegations even if uncontroverted. *Id.*; *Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 253 F.3d 865, 869 (5th Cir. 2001).

To establish jurisdiction over an out-of-state defendant, the plaintiff must show that (1) the long-arm statute of the forum state creates personal jurisdiction over the defendant; and (2) the exercise of personal jurisdiction is consistent with the due process guarantees of the U.S.

Constitution. *Revell v. Lidov*, 317 F.3d 467, 469-70 (5th Cir. 2002). Because Texas' long-arm statute stretches to the constitutional limits, this analysis collapses into a singular examination of whether constitutional due process is met. *Id.*

To satisfy constitutional due process requirements, Plaintiffs must demonstrate "(1) that the non-resident purposely availed himself of the benefits and protections of the forum state by establishing 'minimum contacts' with the state; and (2) that the exercise of jurisdiction does not offend 'traditional notions of fair play and substantial justice.'" *Id.*; *Siddhar*, 2014 WL 2815498 at *3 (collecting Fifth Circuit cases). Minimum contacts with a state exist when "the defendant's conduct and connection with the forum state are such that he should reasonably anticipate being haled into court there." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985).

## 2.      Defendants Are Not Subject to General Personal Jurisdiction in Texas

There should be no question Defendants are not subject to general personal jurisdiction here, and Plaintiffs at least appear to concede as much. *See* FAC ¶ 11. General jurisdiction only exists when the defendant's "affiliations with the State are so 'continuous and systematic' as to render [the defendant] at home in the forum State." *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014). "[F]or a corporation, 'the place of incorporation and the principal place of business are where it is 'at home' and are the paradigm bases for jurisdiction." *Monkton Ins. Servs., Ltd. v. Ritter*, 768 F.3d 429, 432 (5th Cir. 2014) (quoting *Daimler*, 571 U.S. at 127).

Here, (1) Milky Mama is incorporated in California; (2) Milky Mama's sole member is Duhaney, who also lives in California; (3) Milky Mama's principal place of business is in California; and (4) there are no allegations or evidence of other potential continuous and systematic contacts with Texas that could support the exercise of general jurisdiction over the Defendants. *See* **Ex. B**, Decl. of K. Duhaney ¶¶ 3-4. The only allegations made by Plaintiffs that could be construed to support general jurisdiction are that Milky Mama "regularly transacts business in

Texas" and "employs Texas residents." *See* FAC ¶ 15. These allegations fail to establish general jurisdiction over Defendants. Not only are these allegations inaccurate, as Milky Mama currently employees no Texas residents, *see* Ex. B Decl. of Krystal Duhaney ¶¶ 12, 16, but they fail to show that either Milky Mama or Duhaney's business in Texas is so systematic and continuous so as to render the Defendants at home in Texas. Moreover, because "Denise Schwartz" and "Michelle Berkley" are merely Duhaney's anonymous online pen names, to the extent it would be proper to consider such a defendant's "residence," "Denise Schwartz" and "Michelle Berkley" both live in California. *Id.* ¶ 9. Accordingly, general jurisdiction is lacking.

3.   Defendants Are Not Subject to Specific Personal Jurisdiction in Texas[2]

The Court also lacks specific jurisdiction over Defendants. In analyzing potential specific jurisdiction, the Supreme Court has made clear that the focus is on "the relationship among the defendant, the forum, and the litigation," not that of the forum and the plaintiff. *Walden v. Fiore*, 571 U.S. 277, 283-84 (2014). The Fifth Circuit has further clarified that "[f]or specific jurisdiction, ***we look only to the contact out of which the cause of action arises***." *Revell*, 317 F.3d at 472 (emphasis added). And when analyzing specific jurisdiction over intentional tort claims, such as defamation, arising from internet activity, the Fifth Circuit has applied a "sliding scale test" described in *Zippo Mfg. Co. v. Zippo Dot Com Inc.*, 952 F. Supp. 1119 (W.D. Pa. 1997), which is itself rooted in the "effects test" doctrine first formulated in *Calder v. Jones*, 465 U.S. 783 (1984). *See Revell*, 317 F.3d at 470-76 (discussing *Zippo* and *Calder* but hinging its ultimate analysis on *Calder*). Under the "effects test," an act done outside the state that causes injury inside the state

---

[2] While specific personal jurisdiction is a claim-by-claim inquiry, "[w]hen different claims arise from the same contacts," the analysis will be the same for each, and individualized treatment becomes unnecessary. *Allscape Clearing & Maint., Inc. v. Ranken Energy Corp.*, No. 6:13-CV-00027, 2013 WL 5352705, at *4 (S.D. Tex. Sept. 23, 2013). All of Plaintiffs' claims arise from Duhaney's social media posts, and thus, they are analyzed together. *See* FAC ¶¶ 46-77.

may support personal jurisdiction **only if** the defendant "expressly aimed" her conduct towards the forum. *Id*. at 472. The plaintiff's residence in the forum, and suffering or foreseeability of suffering there, cannot alone support jurisdiction. *Id*. at 473.[3]

In *Revell*, the plaintiff, a Texas resident and a former associate director of the FBI sued a professor and university for defamation arising from an article the professor posted on the university's internet bulletin board. *Id*. at 469. The Fifth Circuit concluded there was no personal jurisdiction over the defendants in Texas because the alleged defamatory article contained no reference to Texas, did not refer to the Texas activities of Revell, and, most importantly, did not target Texas readers as distinguished from readers in other states. *Id*. at 473. And while the court acknowledged the professor likely knew the harm of the article would hurt Revell wherever he lived, since that is the case with any defamation, a more "direct aim" at the forum is needed. *Id.* at 476. In short, to be subject to personal jurisdiction of a state, an out-of-state defendant alleged to have defamed a plaintiff online must have specifically aimed her activities at the forum state. *Id.*

Consistent with the Fifth Circuit's holding in *Revell*, district courts within this circuit have consistently dismissed cases for lack of personal jurisdiction where the plaintiff failed to show the defendant's online activity was specifically aimed at the forum state. *See, e.g.*, *Siddhar*, 2014 WL 2815498 at *4 (no jurisdiction over defendant conducting an anonymous "campaign of cyber-

---

[3] The *Zippo* test is appropriate when a defendant operates a website whereas the *Calder* test is most appropriate when the defendant is alleged to have published or disseminated defamatory material on social media sites like Facebook, as is the case here. *See Sanders v. Sennholz*, No. 17-10578, 2017 WL 3215207, at *4 (E.D. Mich. July 28, 2017); *Steele v. Burek*, No. 14-11969, 2014 WL 6612386, at *8 (E.D. Mich. Nov. 20, 2014). Because sites like Facebook and Instagram are often considered "intermediate" interactive websites based on a *Zippo* analysis, the *Zippo* test applied to this case would largely mirror the *Calder* effects analysis as under *Zippo* the Court would need evidence that Defendants targeted Texas specifically to exercise jurisdiction. *See, e.g.*, *Xenex Disinfection Servs. LLC v. Deal*, No. SA-16-CV-232-XR, 2016 WL 3033779, at *3, n.4 (W.D. Tex. May 25, 2016) (citing cases); *Shippitsa Ltd. v. Slack*, 3:18-CV-1036-D, 2019 WL 2372687 at *6, n.3 (N.D. Tex. June 5, 2019). Thus, for the reasons discussed herein, dismissal is appropriate under either analysis.

defamation" where defendant's posts did not target Texas readers specifically); *Xenex Disinfection Servs. LLC v. Deal*, No. SA-16-CV-232-XR, 2016 WL 3033779, at *2-3 (W.D. Tex. May 25, 2016) (no jurisdiction over defendant conducting a "coordinated social media campaign" on Facebook and elsewhere as such social media the websites are not specifically targeted to Texas residents); *Tellez v. Madrigal*, EP-15-CV-304-KC, 2016 WL 11121115, at *5-9 (W.D. Tex. Sept. 19, 2016) (no jurisdiction over a defendant conducting defamatory news broadcasts where defendant did not target Texas and Texas was not the "focal point" of defendant's conduct).

Plaintiffs allege this Court has jurisdiction over Defendants because (1) Duhaney made social media posts discussing Legendairy, a Texas company, and the harm to Legendairy and its owners will thus be felt here; (2) Duhaney supposedly targeted a Texas audience through the pertinent posts and Texas residents supposedly read Duhaney's posts; (3) Duhaney's Denise Schwartz account supposedly impersonated a Texas mother in order to gain the trust of mothers in Texas; (4) Milky Mama intentionally marketed itself to Texas residents; and (5) Milky Mama's alleged social media manager Khadijah Artis-Santiago resided in Texas for a short period and engaged with Krystal Duhaney's pseudonymous accounts, which "gave attention, prominence, and the appearance of credibility" to Defendants' posts. FAC ¶¶ 2, 6, 9, 11, 14-15, 18-20, 44-45.

None of Plaintiffs' jurisdictional allegations support specific jurisdiction.

*a.        Plaintiffs' Location Does Not Support Jurisdiction*

Plaintiffs' location in Texas and the alleged harm that would supposedly be felt here cannot establish personal jurisdiction because the analysis is focused on the defendant's interactions with the forum state, not the plaintiff's. *See Revell*, 317 F.3d at 472-76; *Siddhar*, 2014 WL 2815498 at *4; *Xenex*, 2016 WL 3033779 at *2-3; *Tellez*, 2016 WL 11121115 at *5-9. If it were otherwise, there would be no jurisdictional inquiry at all in defamation cases, and therefore, Legendairy's Texas residency is irrelevant. *Revell*, 317 F.3d at 476. Plaintiffs have also provided no evidence to

show that any reputational harm allegedly suffered is Texas-specific, and in fact, because Legendairy sells its products nationwide and abroad, *see* **Ex. A-1**, the focal point of any harm Plaintiffs allegedly suffered from Duhaney's posts is not Texas. *Boddy v. Pourciau*, No. C18-1046-JLR, 2018 WL 4637380, at \*6 (W.D. Wash. Sept. 27, 2018).

> b.     *The Allegedly Defamatory Posts Do Not Support Jurisdiction*

The statements giving rise to Plaintiffs' claims were made on Facebook and/or Instagram pages, most often within various Facebook groups for breastfeeding mothers. FAC ¶¶ 21-28, 31-34; TAC, Ex. A. While Plaintiffs allege in conclusory fashion that Defendants "targeted" Texas, *see* TAC ¶¶ 6-8, 20, Defendants had no knowledge that Legendairy was based in Texas and none of the allegedly defamatory social media posts which give rise to Plaintiffs' claims cited in Exhibit A to Plaintiffs' TAC refer or allude to Texas, were made in Texas-specific groups, or otherwise focus on or target Texas. *Id.*

Defendants did not have actual knowledge Legendairy is based in Texas, or that Plaintiffs Feehan and Aziz live here, decisively undercutting any notion of Defendants targeting this state. *See* **Ex. B**, Duhaney Decl. ¶ 11. As the Fifth Circuit observed in *Revell*, a "defendant must be chargeable with knowledge of the forum at which his conduct is directed in order to reasonably anticipate being haled into court in that forum." *Revell*, 317 F. 3d at 476; *see also Clemens v. McNamee*, 615 F.3d 374, 380 (5th Cir. 2010) (that defendant's alleged defamatory statement caused plaintiff harm in Texas and defendant purportedly knew the likelihood of such harm was insufficient to make *prima facie* showing of personal jurisdiction).

The posts cited in Plaintiffs' FAC were allegedly made on Legendairy's Facebook page as well as the Facebook groups "Exclusively Pumping Mamas – Education & Support Group," "Group Fancy Pumpers," "IGT and Low Milk Supply Support Group," "The Official Milky Mama Lactation Support Group," and "Milky Mamas Breastfeeding Support Group." FAC ¶¶ 21-28, 31-

34; TAC, Ex. A. These Facebook pages/groups are accessible from all over the world, are not limited to Texas residents, and do not otherwise target or focus on Texas citizens. *See* **Ex. A-2-7**; *see also* **Ex. B**, Decl. of K. Duhaney ¶ 9-11. For example, the "about page" for the Exclusively Pumping Mamas – Education & Support Group states that "[a]ny mom is welcome to join," and the about page for Fancy Pumpers states that it was created to "help educate and support breastfeeding mothers who pump," with no stated or implied geographic focus or limitations. *Id.* The other pages/groups are similarly open to a potentially globally wide audience with no particular geographic focus or limitation. *Id.* Most importantly, none of the allegedly defamatory posts made on these groups specifically target a Texas audience. *See* TAC, Ex. A. Accordingly, Defendants' posts on these Facebook pages are insufficient to confer specific jurisdiction over Duhaney in Texas. *See Siddhar*, 2014 WL 2815498 at *4-5; *Xenex*, 2016 WL 3033779 at *2-3; *Boddy*, 2018 WL 4637380, at *5 (holding specific personal jurisdiction did not exist where defendant published allegedly defamatory tweets on the internet from devices located in Louisiana, because the tweets were viewable nationwide and there was no evidence that defendant had specifically sent the tweets to forum residents); *Cross v. Rodgers,* No. 3:16-CV-01128, 2017 WL 3237623, at *4 (M.D. Tenn. July 31, 2017); *HVLPO2, LLC v. Oxygen Frog, LLC*, 187 F. Supp. 3d 1097, 1110 (D. Neb. 2016) (finding statements made on Facebook group were not targeted towards forum, where Facebook group was accessible nationally and there was no evidence that the group page was targeted towards forum residents or that defendants took some action to ensure forum residents viewed the posts on the Facebook group page).

The allegedly defamatory post made on Legendairy's Facebook page cannot support an exercise of specific jurisdiction over Defendants. Here, Plaintiffs assert that Defendants' alleged post on Legendairy's Facebook page targeted Texas because Legendairy's Facebook page identified Legendairy as a Texas company. FAC ¶¶ 14, 20; Ex. A. to TAC. Plaintiffs' locale is not

determinative. In actuality, Legendairy's Facebook page is a public Facebook page and therefore any posts—including those allegedly made by Defendants—were viewable worldwide and thus "meant for a national or even international audience." *See Binion v. O'Neal*, 95 F. Supp. 3d 1055, 1060 (E.D. Mich. 2015). At most, Plaintiffs' assertion that Legendairy's Facebook page indicated it was a Texas company only demonstrates that any "harm" resulting from the allegedly defamatory posts could be felt in Texas, which is insufficient to support specific jurisdiction. *See id.* at 1060-1061; *Revell*, 317 F.3d at 472-76. Thus, because the review allegedly posted by Defendants on Legendairy's Facebook page is accessible worldwide and does not target or even reference Texas, *see* TAC, Ex. A, it too cannot establish specific jurisdiction over Defendants. *See e.g.*, *See Siddhar*, 2014 WL 2815498 at *4-5; *Xenex*, 2016 WL 3033779 at *2-3; *Binion*, 95 F.3d at 1060; *Oxygen Frog, LLC*, 187 F. Supp. 3d at 1110.

Finally, Plaintiffs have provided nothing more than conclusory allegations that Defendants' posts were actually read by a Texas audience. Without more, such allegations are insufficient to establish specific personal jurisdiction, especially given that Defendants' posts were made on Facebook pages/groups that were accessible by users nationwide. *Boddy*, 2018 WL 4637380 at *6-7 (holding Plaintiffs' allegation that Defendants' statements were purposefully directed to Washington readers was conclusory and insufficient to establish personal jurisdiction). Plaintiffs' conclusory allegations should be given no weight. *See id*.

c. *The Photo Used for the Denise Schwartz Account Does Not Support Jurisdiction.*

Plaintiffs' allegation that "upon information and belief" Duhaney intentionally used photographs of Texas residents for the Denise Schwartz and Michelle Berkley accounts, *see* TAC ¶ 6, is the sort of conclusory allegation courts are to ignore when conducting jurisdictional analysis and is belied by the evidence. *See Panda Brandywine*, 253 F.3d at 869; *see also* **Ex. B** ¶ 10 (the

photos used for were randomly selected from Google images). Regardless, the fact that Texas was listed as Denise Schwartz' residence on Facebook does not, as Plaintiffs contend, establish that Defendants' targeted Texas with their allegedly defamatory posts or that this Court has specific jurisdiction over Defendants. Nor does Duhaney's provision of a Texas phone number to Plaintiffs' counsel establish specific jurisdiction in Texas as none of Plaintiffs' claims arise from the Texas phone number. Plaintiffs' allegations that Duhaney "e-personated" a Texas resident does not support specific jurisdiction, as Plaintiffs' claims do not arise from this alleged e-personation. Plaintiffs' claim of e-personation are also factually belied by the fact the Michelle Berkley account is listed as a resident of Anaheim, California, and the Denise Schwartz account also posted that she resided in California. *See* Dkt. 14-8, Ex. A-6, at 3-4.

To establish that Defendants targeted Texas with their social media posts, Plaintiffs must show far more than Defendants' mere mention of Texas on social media. *See e.g.*, *McNeil v. Biaggi Prods., LLC*, No. 3:15CV751, 2017 WL 2625069, at *8 (E.D. Va. 2017) ("While the Defendants featured [Plaintiff] as the subject of these [Facebook] posts and even references Virginia in some of them, ***nothing indicates that the Defendants specifically directed the posts at Virginia or to Virginia social media users***.") (emphasis added); *Gorman v. Jacobs*, 597 F. Supp. 2d 541, 548 (E.D. Penn. 2009) ("Simply . . . referring to the forum in one's writing will not suffice to satisfy the *Calder* effects test."). Here, Plaintiffs have not shown more. Instead of targeting Texas, the evidence provided by Plaintiffs in their response to Defendants' Second Motion to Dismiss shows the Denise Schwartz account did not target Texas, did not interact with Texas residents, and instead reached a national audience. *See* Dkt. 14-8, Ex. A-6 at 3, 4 (exchanges with users in New England and Ohio); Dkt. 14-9, Ex. A-7 at 3, 4 (exchanges with users in North Carolina and Mississippi).

> d.   *Irrelevant Allegations Concerning Ms. Artis-Santiago Do Not Support Jurisdiction*

The allegation that Khadijah Artis-Santiago "engaged in exchanges with" Defendants on social media and resided in Texas is irrelevant to the issue of specific jurisdiction. For a court to exercise specific jurisdiction over Defendants, Plaintiffs must show that their causes of action arise out of Defendants' forum-related contacts. *Pervasive Software Inc. v. Lexware GmbH & Co. KG*, 688 F.3d 214, 221 (5th Cir. 2012). Here, Plaintiffs base their claims on the allegedly defamatory and false statements posted **by Denise Schwartz and Michelle Berkley**, not the "interactions" made by Artis-Santiago. FAC ¶¶ 21-28, 31-34, 46-77; TAC, Ex. A. Despite this, Plaintiffs attempt to argue that Artis-Santiago's actions are relevant to Plaintiffs' claims by asserting that Artis-Santiago's exchanges "gave attention, prominence, and the appearance of credibility" to the Denise Schwartz and Michelle Berkley posts. This allegation is unfounded, however, and the fact remains that Plaintiffs' claims all arise from the Denise Schwartz and Michelle Berkley posts and not from anything posted by Artis-Santiago. Artis-Santiago's online interactions and former residence in Texas are thus nothing more than jurisdictional red herrings, and they do not establish specific jurisdiction over Defendants.

Even if Artis-Santiago's interactions and residence did give rise to Plaintiffs' claims, which they do not, they would still be insufficient to establish specific jurisdiction over Defendants as the posts provided by Plaintiffs reveal that Artis-Santiago neither mentioned, let alone targeted, Texas in her interactions, nor did she discuss Legendairy or its products. *See* TAC, Ex. A.

Further, as part of their attempt to invoke specific jurisdiction where it does not exist, Plaintiffs mischaracterize Artis-Santiago's role at Milky Mama and her employment history there. Contrary to Plaintiffs' claims that Artis-Santiago was Milky Mama's "social media manager" at all times relevant to Plaintiffs' claims, TAC ¶ 19, Artis-Santiago did not become an employee of

Milky Mama until June of 2019. *See* **Ex. B** ¶ 12. Thus, Artis-Santiago did not start working for Milky Mama until *after* many the posts giving rise to Plaintiffs' claims were made, although she was a fan of Milky Mama's products before then as she had volunteered to moderate Milky Mama's Facebook Group. *See* **Ex. B** ¶ 14. In any event, Artis-Santiago has never been Milky Mama's social media manager, and she lives in Oklahoma, not Texas. **Ex. B ¶¶ 15-16**. Since June 2019 she has been a lactation consultant/customer service representative for Milky Mama. **Ex. B** ¶ 12. Artis-Santiago's role as a lactation consultant/customer service representative consists of providing basic customer support, counseling for breastfeeding, and interacting with customers to handle complaint, process orders, and provide information. **Ex. B** ¶ 13. None of her alleged conduct gives rise to Plaintiffs' claims, specifically targets Texas, or given the timing can be attributed to Milky Mama. Thus, her acts cannot support exercise of specific jurisdiction.

Finally, even if minimum contacts were somehow met, which they are not, exercising jurisdiction over Defendants for Duhaney merely posting a few statements online from her home state, on social media platforms that are themselves overwhelmingly based in California,[4] would offend traditional notions of fair play and substantial justice for many of the reasons as set forth above. Namely, litigation in Texas would be unfair because (1) Defendants and/or Milky Mama's employees should not be forced to travel to Texas simply because Plaintiffs are found here and chose to file suit on their home turf; and (2) Texas has little to no interest in adjudicating the statements of California residents not aimed at Texas, whereas California has a strong interest,

---

[4] Facebook and Instagram's California residency can readily be determined from Facebook's public SEC filings, of which the court may take judicial notice. *See* **Ex. C** at 1, 5, List of Subsidiaries (both Facebook and Instagram, which is a Facebook subsidiary, have principal places of business in California); *Lovelace v. Software Spectrum Inc.*, 78 F.3d 1015, 1018 (5th Cir. 1996) (a district court may take judicial notice of SEC filings).

especially since the statements were made on social media platforms run from California that Plaintiffs seek to silence in asking for injunctive relief. *See* FAC at Prayer ¶ C.

In sum, Defendants neither engaged in activity in Texas giving rise to this dispute nor otherwise targeted this state, and Duhaney could not have reasonably anticipated that her posting online from California, on social media platforms run by California companies, would result in her and her company being hauled into court across the country in Texas. *See Revell*, 317 F.3d at 472-76; *Siddhar*, 2014 WL 2815498 at *4; *Xenex*, 2016 WL 3033779 at *2-3. Thus, exercising personal jurisdiction over Defendants would be improper, and this case should be dismissed.

## B.   Alternatively, the Court Should Transfer this Case to the Central District of California

If the Court finds that personal jurisdiction exists, it should exercise its discretion to transfer venue to the Central District of California, where Defendants are located, the alleged defamatory statements were made, and where most of the evidence and witnesses will be found. Transfer of venue under 28 U.S.C. § 1404(a) is appropriate when (1) the complaint could have been filed in the district to which transfer in sought, (2) transfer is for the convenience of the parties and witnesses, and (3) transfer serves the interests of justice. *See In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004). All three transfer requirements are met.

### 1.   Venue is Proper in Central District of California

Plaintiffs could have filed this suit in the Central District of California where all Defendants reside. *See* **Ex. B**, Decl. of K. Duhaney ¶¶ 3-4, 9; 28 U.S.C. § 1391(b)(1). Moreover, all of the events giving rise to Plaintiffs' claims occurred within the Central District of California, as all of the social media posts that form the basis of Plaintiffs' action were made from Duhaney's computers in California. *See* **Ex. B** ¶ 11; 28 U.S.C. § 1391(b)(2).

17

2.      The Private Factors Favor Transfer

"The determination of 'convenience' turns on a number of private and public interest factors, none of which are given dispositive weight." *Volkswagen*, 371 F.3d at 203. The private interest factors include (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive. *Id*. All the private factors weigh in favor of transfer.

First, all the events related to Plaintiffs' claims occurred in the Central District of California. Thus, all of Defendants' relevant documents will be found within California and all of Defendants' witnesses would likely be in California as well, since Duhaney and five out of the six people employed by Milky Mama live there. *Id*. ¶ 6. It would be much easier to obtain any additional documents necessary for this case from Facebook or Instagram in California, as Facebook, which owns Instagram, is based there. As a result, it appears that all relevant sources of proof are in California. This factor thus favors transfer.

Second, at this early stage of litigation, it appears that most of the witnesses will be party-witnesses or witnesses from California-based Facebook/Instagram. As discussed above, five of Defendants' employees are located in and around Rancho Cucamonga, California, as would most Facebook or Instagram employees or corporate representatives. Only Plaintiffs themselves would be found in Texas. For the same reasons, the cost of attendance for witnesses in this case is also likely lower in California than in Texas. This factor also favors transfer.

Finally, Plaintiffs' presence in California should not be overlooked when assessing transfer of this action to the Central District of California. Plaintiffs sell their products at numerous retail

locations within California and within the Central District of California specifically. **Ex. A-1**. It would thus not be unfair to require Plaintiffs to try this case in California.[5]

　　　　　3.　　Public Interest Favors Transfer

In addition to the private interest factors, the Court should evaluate the public interest factors, which include (1) the administration difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws. *See Volkswagen*, 371 F.3d at 203. Each factor favors transfer or is neutral.

First, this District is among the busiest in the nation as reflected by the Federal Court Management Statistics, which, for the period ending in June 30, 2020, indicate that the Central District of California, on average, disposes of civil cases faster than this District. Whereas the median time from filing to disposition in the Central District of California is 4.7 months, in the Western District of Texas it is 6.3 months. *See* **Ex. A-7**.

Second, because all events relating to Defendants' allegedly defamatory conduct occurred in California, on social media platforms run from California, California has a strong interest in this action. *Wet Sounds, Inc. v. Audio Formz, LLC*, No. A-17-CV-141-LY, 2017 WL 4547916, at *4 (W.D. Tex. Oct. 11, 2017) (concluding this District lacked a strong interest in a case because none of the events giving rise to it occurred here). Plaintiffs are also seeking permanent injunctive relief to prevent Defendants from posting about Plaintiffs' products online. *See* TAC at Prayer ¶ B. The nature and extent of this injunctive relief will necessarily have a distinct local effect in the Central

---

[5] Plaintiffs' choice of forum, while relevant, is not dispositive, and the deference given to a plaintiff's choice of forum is lessened where the operative facts underlying the case did not occur in the chosen forum. *Cadle Co. v. Keyser*, No. A-14-CV-758-LY, 2015 WL 764256, at *2 (W.D. Tex. Feb. 23, 2015).

District of California. *Int'l Truck and Engine Corp. v. Dow-Hammond Trucks Co.*, 221 F. Supp. 2d 898, 905 (N.D. Ill. Sept. 4, 2002).

Third, while there are no apparent conflict of law issues complicating this case, courts within the Central District of California are certainly familiar with Plaintiffs' garden variety claims of defamation, libel, and business disparagement as well as with their federal claim under the Lanham Act. Thus taken together, the relevant public and private transfer factors warrant transfer.[6]

## C. Alternatively, the Court Should Order Plaintiffs to Make a More Definite Statement with Respect to their Lanham Act claims.

In the event this Court finds that personal jurisdiction exists, it should order Plaintiffs to amend their complaint to provide more details as to what actual provisions of the Lanham Act Plaintiffs believe Defendants have violated.

Under Rule 12(e), "[a] party may move for a more definite statement of a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response." FED. R. CIV. P. 12(e). Here, Defendants are unable to reasonably prepare a response to Plaintiffs' Lanham Act claims, as it is unclear what specific provision of the Lanham Act Plaintiffs allege Defendants have violated. Plaintiffs' complaint only alleges that Defendants violated the Lanham Act, that Defendants' statements online are false and have allegedly confused or deceived consumers, and that Plaintiffs' have suffered irreparable injury as a result of Defendants' statements. *See* FAC ¶¶ 65-77. Plaintiffs plead this cause of action generically. Without knowing the actual Lanham Act violations Plaintiffs complain of, Defendants are unable to formulate appropriate defenses and, more importantly, are unable to reasonably

---

[6] Had this case not been removed from state court, venue would be improper in this district because Plaintiffs have not established that Defendants' allegedly defamatory posts targeted Texas or Texas residents. *See Nuttall v. Jaurez*, 984 F. Supp. 2d 637, 646 (N.D. Tex. 2013). This fact underscores that this case is better suited to be heard in the Central District of California and should thus be transferred there. *Id.*

prepare a response to Plaintiffs' Fourth Amended Complaint. Accordingly, this Court should order Plaintiffs to provide a more definite statement as to what specific provisions of the Lanham Act Plaintiffs allege Defendants have violated.

## IV.      CONCLUSION

For the foregoing reasons, Defendants respectfully request this Court dismiss this lawsuit for lack of personal jurisdiction. Alternatively, Defendants respectfully request that this Court transfer this case to the Central District of California, whether the material events in dispute occurred and where the sources of proof are located. Defendants also respectfully request in the alternative that this Court order Plaintiffs to provide a more definite statement with respect to their Lanham Act claims. Defendants further pray for any additional relief, in law or in equity, to which they may be entitled.

DATED: October 5, 2020

Respectfully submitted,

Pillsbury Winthrop Shaw Pittman LLP

BY:   *Casey Low*
     Ronald Casey Low
     Texas State Bar No. 24041363
     casey.low@pillsburylaw.com
     Steven Tepera
     Texas State Bar No. 24053510
     steven.tepera@pillsburylaw.com
     401 Congress Avenue, Suite 1700
     Austin, TX 78701-3797
     Phone: 512.580.9600
     Fax: 512.580.9601

     *Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify I caused a true and correct copy of the foregoing pleading to be served on all counsel of record electronically or by another manner authorized by Federal Rule of Civil Procedure 5(b)(2) on October 5, 2020.

/s/ Casey Low
Casey Low