IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| JOE FEEHAN, LUNA AZIZ, AND LEGENDAIRY MILK, LLC | ) ) ) | |
| Plaintiff, | ) ) | |
| vs. | ) ) | Civil Action No. 1:19-cv-01169-RP |
| JANE DOE a.k.a. "DENISE SCHWARTZ," KRYSTAL RHODEN a.k.a. KRYSTAL DUHANEY, and MILKY MAMA, LLC | ) ) ) ) | |
| Defendant. | ) | |

**DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO DISMISS AND ALTERNATIVE MOTION TO TRANSFER VENUE AND FOR MORE DEFINITE STATEMENT**

Defendants file this reply in support of their Motion to Dismiss and Alternative Motion to Transfer Venue and Motion for More Definite Statement. Dkt. 34. Plaintiffs' Response, Dkt. 36, does nothing to change the undeniable fact that the allegedly defamatory posts giving rise to this dispute, all of which were made by Krystal Duhaney using her anonymous screen names Denise Schwartz and Michelle Berkley, hardly reference Texas and, more importantly, do not target this state or its citizens over the citizens of other states. In fact, the Plaintiffs' own evidence proves that citizens of other states were overwhelmingly the recipients of the supposedly defamatory statements with which Plaintiffs take issue. Specific jurisdiction is thus lacking, and the Court should dismiss this case.

## I.     Defendants Are Not Subject to Specific Personal Jurisdiction in Texas[1]

Plaintiffs' claims in this case revolve entirely around Krystal Duhaney's allegedly defamatory posts on various social media sites from her pseudonymous Denise Schwartz and Michelle Berkley social media accounts. *See* Dkt. 33 (Fourth Am. Comp.) ("FAC") ¶¶ 5-7, 20-35, 46-77. To establish specific personal jurisdiction based on this alleged online defamation, Plaintiffs must show that the statements which give rise to Plaintiffs' causes of action, *i.e.*, the supposedly defamatory social media posts, were "aimed at or directed to Texas." *Clemens v. McNamee*, 615 F.3d 374, 380 (5th Cir. 2010). It is not enough that the subject matter of the statements "relate to or implicate" the forum, as Plaintiffs suggest, but rather, the forum itself must "be the focal point of the story." *Id.* at 379; *Revell v. Lidov*, 317 F.3d 467, 469-70 (5th Cir. 2002) (no jurisdiction where defamatory statements did not refer to the plaintiff's Texas activities and were not directed to Texas readers as opposed to readers from other states). Here, Plaintiffs have not and cannot meet their jurisdictional burden.

---

[1] Plaintiffs dot not contend general jurisdiction exists and thus concede that issue. *See* Dkt. 36 at 5.

1

First and most importantly, none of the allegedly defamatory statements giving rise to Plaintiffs' claims target Texas or its citizens. The statements in Exhibit A to Plaintiffs' Third Amended Complaint ("TAC") which are incorporated by reference into Plaintiffs' Fourth Amended Complaint and which actually give rise to Plaintiffs' claims do not even reference Texas. *See* Dkt. 7-1 (Ex. A to TAC). Even the few stray references to Texas contained in the attachments to Plaintiffs' Response are merely taken from posts to various Facebook pages for breastfeeding mothers that themselves neither focus on Texas nor target its residents. *See* Dkt. 36-7 at 3-5; Dkt 36-8 at 4-5; Dkt. 34 at 11-13.

In fact, a review of the evidence attached to Plaintiffs' Response reveals the opposite—these Denise Schwartz and Michelle Berkley posts, most of which do not even appear to give rise to Plaintiffs' claims, received responses not from Texas citizens but from users who identified themselves as living in New England, Ohio, North Carolina, and Mississippi. *See* Dkt. 36-7 at 3, 4 (responses from users in New England and Ohio); Dkt. 36-8, at 3, 4 (responses from users in North Carolina and Mississippi). Plaintiffs simply repeating the assertion that Duhaney targeted Texas does not make it true, and the evidence proves it is false. Further, the mere fact that a miscellaneous Schwartz post occasionally referenced Texas is insufficient to confer specific jurisdiction—a much more direct targeting by the defamatory statements which gave rise to Plaintiffs' claims is required. This action directing the statements toward Texas is lacking, requiring dismissal. *See McNeil v. Biaggi Prods., LLC*, No. 3:15-CV-751, 2017 WL 2625069, at *8 (E.D. Va. 2017); *Gorman v. Jacobs*, 597 F. Supp. 2d. 541, 548 (E.D. Penn. 2009).

Second, because Plaintiffs cannot establish that any of the posts giving rise to their claims specifically targeted Texas or Texas residents, Plaintiffs resort to arguing that jurisdiction exists because Defendants knew that Legendairy was based in Texas, which is belied by the evidence.

Krystal Duhaney has made clear that she did not know that Legendairy was based in Texas when making the social media posts giving rise to this dispute, nor did she know the whereabouts about the individual Plaintiffs Joe Feehan and Luna Aziz. *See* Dkt. 34-2 (Decl of K. Duhaney) at ¶ 11. These facts remain unchallenged. Despite this, Plaintiffs raise a number of questionable arguments as to why Duhaney's statement, made under oath, should be ignored. Each of these arguments fail, or are similarly belied by Plaintiffs evidence, and should thus be given no weight by this Court.

To start, Plaintiffs' arguments require multiple unsupported and unreasonable inferences. Plaintiffs argue that Defendants knew that Legendairy was based in Texas because Legendairy was a "key competitor" of Milky Mama, and Legendairy was the only competitor Defendants posted about. Response at 8. During Duhaney's deposition, however, she testified that Legendairy was just "one of many" competitors in the breastfeeding supplement market, not Milky Mama's key competitor. Ex. A (Duhaney Deposition) at 189:15-190:4. Moreover, the posts complained of in Plaintiffs' complaint show that Defendants posted about other supplement products besides Legendairy's products, such as fenugreek. *See* FAC ¶ 25 ("I tried Legendairy Milky, *fenugreek*, and everything and nothing worked.") (emphasis added).

Plaintiffs similarly claim that because Legendairy's website and products mentioned Legendairy's Texas roots, Defendants must have targeted Texas. This position is both legally and factually deficient. The Supreme Court has held a defendant's mere knowledge of a plaintiff's strong forum connections is insufficient to create specific personal jurisdiction. *Walden v. Fiore,* 571 U.S. 277, 289 (2014). Rather, the focus is on *defendants'* conduct and targeting of the forum, which Plaintiffs' evidence establishes did not occur here. Even if there was some legal merit to the argument, Plaintiffs have provided no evidence of Defendants knew of a Texas connection. It is not clear whether Plaintiffs' Facebook page has always indicated that Legendairy

is a Texas-based company, *see* Dkt. 10 at 11, n.2, but even if so, the fact that Texas was referenced on Plaintiffs' website or products does not mean Duhaney saw these references, let alone that she was aware of the Plaintiffs' location in Texas at the time she made the relevant social media posts.

Plaintiffs also fail in tying specific jurisdiction to "Denise Schwartz." Plaintiffs contend that Defendants' efforts to cast "Denise Schwartz" as a Texas resident establish Defendants' knowledge that Plaintiffs were located in Texas. This argument is countered by Plaintiffs' own evidence, which shows that Defendants were unaware of Legendairy's location in Texas. Plaintiffs' omit that the Denise Schwartz account stated on multiple occasions that Denise Schwartz was a resident of Texas and California. *See e.g.*, Dkt. 36 at 3-5. Moreover, Plaintiffs ignore that Duhaney's other pseudonymous account listed that Michelle Berkley was a resident of Anaheim, California. *See* Ex. B (Plaintiffs' Screenshot of Michelle Berkley profile). At any rate, Plaintiffs' argument is directly contravened by Duhaney's own deposition testimony, where she explained that there was no rhyme or reason she chose Fort Worth as the location for the Denise Schwartz account—Fort Worth was just a city where Duhaney did not live. *See* Ex. A at 155:6-9.

Third, Plaintiffs' repeated contention that specific jurisdiction exists because the brunt of the harm caused by Duhaney's posts was felt in Texas has been soundly rejected by the Fifth Circuit, which has explained that "the plaintiff's residence in the forum, and suffering of harm there, will not alone support jurisdiction." *Revell*, 317 F.3d at 472-76; *Clemens*, 615 F.3d at 380, n.2. Any other rule would eradicate the specific jurisdiction inquiry in defamation cases, ignoring binding precedent in the process. *Id.*

Fourth, Plaintiffs' attempt to conjure specific jurisdiction by shifting focus from the Schwartz and Berkley statements to various irrelevant activities, such as Duhaney's emailing with Plaintiffs' counsel and unrelated "interactions" online by a then non-Milky Momma employee

(Khadijah Artis-Santiago), also fails to support jurisdiction. Most fundamentally, neither of these supposed Texas contacts support personal jurisdiction as the Court is to "look only to the contact out of which the cause of action arises" for determining specific jurisdiction. *Revell*, 317 F.3d at 469-70. It is the Denise Schwartz and Michelle Berkley posts that give rise to Plaintiffs' claims, *see* FAC ¶¶ 21-77, and it is undisputed that these posts were made by Duhaney from computers in California on social media websites that were viewed by a nationwide, and not Texas specific, audience. *See* Dkt. 34 at 4-5; Dkt. 34-2 ¶¶ 9-11; Dkt. 36 at 3-4; Dkt. 36-7 at 3-5; Dkt. 36-8 at 3-4. The Artis-Santiago and attorney communications are irrelevant. Duhaney providing Plaintiffs' counsel a Texas phone number to contact her is unrelated to the supposed defamation for which Plaintiffs have asserted claims, as are the interactions by Ms. Artis-Santiago. *See* FAC ¶¶ 21-35, 46-77. Furthermore, even if the Artis-Santiago interactions, which are neither alleged to be defamatory nor are defamatory on their face, did somehow give rise to Plaintiffs' claims, which they do not, they would nonetheless be insufficient to establish personal jurisdiction over the entirely California-based Defendants since none of Artis-Santiago's posts discuss Plaintiffs' products or even mention Texas and could not be attributed to Defendants in any event. *See* Dkt. 36-16, Ex. A-15; Dkt. 36-18, Ex. A-17.[2]

---

[2] Although Ms. Artis-Santiago's "interactions" are irrelevant for jurisdictional purposes, Defendants note that Plaintiffs are mistaken as to Artis-Santiago's relationship with Milky Mama. Artis-Santiago was not a Milky Mama employee or a representative at the time the posts giving rise to this suit were made. Dkt. 34-2 ¶¶ 12-15. Nor was she a participant in Defendants' alleged "scheme," as she did not even know that Krystal Duhaney operated the Michelle Berkley or Krystal Duhaney accounts. Ex. C. (Artis-Santiago Deposition) at 90:23-91:2; 103:1-103:6. Prior to Artis-Santiago becoming a Milky Mama employee in June 2019, Dkt. 34-2 ¶ 12, she served as a volunteer administrator of the Milky Mama Support Group on Facebook and was an independent lactation consultant who used Milky Mama's website as a portal for lactating mothers to find her independent consultation services. **Ex. D**, Decl. of K. Duhaney ¶¶ 4-9. Plaintiffs' evidence actually confirms this, as they show that Artis-Santiago was not an affiliated Milky Mama consultant, but rather a general consultant that could be booked through Milky Mama's website. *Id.*; *see also* Dkt 36-24, Ex. C-2 at 4 (Artis-Santiago post stating "[T]his is me[]" with screenshot of booking page for lactation consultants in which Artis-Santiago circled that she is an unaffiliated and unnamed certified lactation consultant). Milky Mama provides a mechanism for unaffiliated professionals to offer their services, much akin to how one might find a professional on websites like www.Angieslist.com. In the same way one might find a plumber on Angie's List, the plumber would neither work for nor represent Angie's List itself.

Finally, Plaintiffs' own cases support dismissal. In *Hawbecker v. Hall*, for example, the defendant was subject to personal jurisdiction in Texas because the allegedly defamatory Facebook posts in that case (1) were expressly directed to the plaintiff's Texas-based friends, family members, and employer; and (2) stated, for example, that the plaintiff "lives and works in San Antonio Texas so please pass the word on to any one [sic] that you may know there." *Hawbecker v. Hall*, 88 F. Supp. 3d 723, 729 (W.D. Tex. 2015). These are the sorts of repeated directing of messages to Texas readers specifically along with references to a plaintiff's Texas activities that must exist for jurisdiction to flow from alleged online defamation, all of which are lacking here. *Revell*, 317 F.3d at 469-70.

Similarly, in *Next Techs., Inc. v. ThermoGenisis*, the plaintiff was able to establish jurisdiction over certain individual defendants in large part because the co-defendant corporate entity they worked for, and which was represented by the same counsel, had already conceded that personal jurisdiction existed based on the exact same allegedly defamatory online activity. No. A-15-CV-00225-LY-ML, 2015 WL 6554421, at *4 (W.D. Tex. Oct. 28, 2015). Further, the allegedly defamatory statements in *Next Technologies* were made in an apparent attempt to "pressure the [defamed] competitor into reconsidering a proposed business combination" between the plaintiff and defendants. *Id.* That is, the parties had a proposed business dealing in Texas, and the alleged defamation was intended to result in a formalized business agreement between the parties. *Id.* Nothing even close to these sorts of circumstances exist here.

This case is instead far more similar to the vast majority of online defamation cases, in which (1) the allegedly defamatory statements are projected into the void of social media sites like Facebook and Instagram, (2) the statements are not specifically directed at the citizens of the plaintiff's forum state and do not reference the plaintiff's forum-specific activities, and (3) any

resulting litigation should only be brought where the defendant resides as that is where personal jurisdiction is proper. *See, e.g.*, *Siddhar v. Varadharajan*, No. CIV.A. 4:13-CV-1933, 2014 WL 2815498, at *4 (S.D. Tex. June 20, 2014) (no jurisdiction where "a majority of the allegedly defamatory postings and emails [] included in [the] complaint make no mention of Texas, nor [plaintiff's] activities in Texas, and do not target Texas readers specifically"); *Xenex Disinfection Services LLC v. Deal*, No. SA-16-CV-232-XR, 2016 WL 3033779, at *2-3 (W.D. Tex. May 25, 2016); *Binion v. O'Neal*, 95 F. Supp. 3d 1055, 1060 (E.D. Mich. 2015); *McNeil*, 2017 WL 2625069 at *8; *Gorman*, 597 F. Supp. 2d. at 548; *Boddy v. Pourciau*, No. C18-10146-JLR, 2018 WL 4637380, at *6 (W.D. Wash. Sept. 27, 2018). Like the courts in these cases, this Court should dismiss Plaintiffs' case for lack personal jurisdiction.[3]

## II.    Defendants Have Not Waived Their Personal Jurisdiction Objections

Plaintiffs also argue that Defendants' jurisdictional objections, which have now been made three times in this Court, have somehow been waived by Duhaney posting online that Denise Schwartz penname lived in Texas. *See* Response at 5-6. The law does not support this expansive view of waiver, and Plaintiffs' legal support is far afield of the proposition they claim it supports. Plaintiffs string together language from *Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, for the undisputed proposition that personal jurisdiction, unlike subject matter jurisdiction, may be waived. 456 U.S. 694, 703 (1982). In *Ireland* the Supreme Court explained that personal jurisdiction is a waivable right, which may be waived, for example, by failing to timely object to personal jurisdiction, agreeing to jurisdiction in a contract with the plaintiff, or offensively using other court procedures, such as seeking affirmative relief prior to seeking dismissal for lack of

---

[3] For many of the same reasons, it would be constitutionally unfair to force Defendants to defend themselves in this Court, where the sole contact with this state is merely Plaintiffs' residency here. *See* Dkt. 34 at 16-17.

personal jurisdiction. *Ins. Corp. of Ireland, Ltd.*, 456 U.S. at 703, 705. The Supreme Court went on to find that, in the case before it, the defendant's repeated failure to comply with the district court's discovery orders for production of information concerning jurisdiction warranted a sanction under Rule 37, namely, the acceptance of otherwise disputed facts that gave rise to personal jurisdiction. *Id*. at 698-699, 703-705. None of that applies here, however, as Defendants have not failed to comply with this Court's orders. Without any other meaningful authority backing Plaintiffs' theory, Plaintiffs' waiver argument collapses. [4]

Waiver is particularly unlikely in the present case because of Defendants' consistent position that jurisdiction is improper. Defendants have objected to personal jurisdiction not once, but three times, and their mere act of timely removing this case from state court is not the sort of conduct that results in a waiver of jurisdiction. This Court has found that even failure to raise jurisdiction immediately post-removal in a 12(b) motion, which Defendants did three times, and merely alluding to it in an answer, protects against waiver. *See Bavikatte v. Polar Latitudes, Inc.*, No. A-15-CV-00437-LY-ML, 2015 WL 8489997, at *1, n. 1, 5-6 (W.D. Tex. Dec. 8, 2015) (also finding forum activities that did not give rise to plaintiff's claims irrelevant for jurisdictional purposes). Plaintiffs' argument would write out the minimum contact analysis required by both parties' repeated citation to binding precedent. Under Plaintiffs' theory of waiver, any post online where a party purports to reside in the forum state would result in personal jurisdiction there without regard to the actual contacts with the forum itself, analysis of which is required except for

---

[4]  In a footnote, Plaintiffs also cite to *Corporación Mexicana De Mantenimiento Integral, S. De R.L. de C.V. v. Pemex—Exploración Y Producción* in support of their claim that Defendants "forfeited" their jurisdictional objections and submitted to the jurisdiction of this court. 832 F.3d 92, 101 (2d Cir. 2016). *Pemex* does not support a finding of jurisdictional waiver in this case, however. There, the Second Circuit found the defendant had forfeited its jurisdictional objections by seeking and obtaining affirmative relief from the Second Circuit after abandoning its jurisdictional arguments in light of intervening foreign precedent the defendant believed would allow it to prevail upon remand. *Id.* at 101-102. No such similar facts have occurred in this case.

specific circumstances such as those set forth by the Supreme Court in *Ireland* and which do not exist here. *Clemens*, 615 F.3d at 380; *Revell*, 317 F.3d at 469-70. Personal jurisdiction has neither been waived nor consented to. It is lacking, and this Court should so rule, dismissing this case.

Even if the law were as Plaintiffs claimed, waiver would nonetheless be inappropriate. The allegations are a misinterpretation of the facts as evidenced by Plaintiffs' own evidence. Duhaney informed others who did not live in Texas that Denise Schwartz lived in both Texas and California. Dkt. 36-7 at 3-5. Further, Duhaney also clearly listed that Michelle Berkley, Duhaney's other penname which made posts giving rise to Plaintiffs' claims, resided in Anaheim California, not Texas. *See* Ex. B. Finally, it is undisputed that the complained-of acts did not actually occur in Texas, regardless of Plaintiffs' unreasonable interpretation of the intent of the cited messages.

## III.   Alternatively, this Case Should be Transferred to the Central District of California

If this Court finds that personal jurisdiction exists, it should exercise its discretion to transfer this case to the Central District of California. Not only are Defendants located in the Central District, but that is where the allegedly defamatory posts were made and where most of the evidence and witnesses would be found.

Here, the private interest factors weigh in favor of transfer because it will be easier to obtain proof in California, as that is where Defendants and the vast majority of Defendants' employees are located, and where Facebook and Instagram have their headquarters. Plaintiffs claim the location of Defendants is not a proper basis for transfer, but as most witnesses will be party witnesses, Defendants and their employees' locations are highly relevant. In any event, any records Facebook or Instagram would have, which would undoubtedly be the core documentary evidence in this case, would come from California as that is where the custodian of records for both entities are found, as Plaintiffs concede in their initial disclosures and as proven by Plaintiffs' own

discovery efforts filed in state court, which show Plaintiffs subpoenaed Facebook in California. *See* Dkt. 1-3. Any witnesses from these social media platforms would similarly be found in California, and as third parties, their convenience is paramount. *Id.*

The public interest factors also weigh in favor of transfer in this case. Not only is it more judicially efficient for this case to be heard in the Central District of California, but California has an overwhelmingly stronger interest in this action, since Plaintiffs seek injunctive relief and all Defendants' allegedly defamatory conduct occurred in California, on social media platforms based there. *Int'l Truck and Engine Corp. v. Dow-Hammond Trucks Co.*, 221 F. Supp. 2d 898, 905 (N.D. Ill Sept. 4, 2002). Plaintiffs' mistaken and conclusory assertion that Defendants' targeted Texas and sought to mislead Texas consumers does not change the fact that Plaintiffs' attempt to silence conversations of California citizens on California platforms would have a distinct impact in California. Furthermore, Plaintiffs' have not shown that courts within the Central District of California are likely unfamiliar with Plaintiffs' garden variety common law or statutory claims— which will in fact likely be adjudicated pursuant to California law—or any other reason this case should remain here other than the mere fact that Plaintiff is based here. Plaintiffs' location in this District is the sole connection this case has to this forum, and it is not enough to anchor this case here, especially when the operative facts did not occur here. *Cadle Co. v. Keyser*, No. A-14-CV-758-LY, 2015 WL 764256, at *2 (W.D. Tex. Feb. 23, 2015). Transfer is thus proper.

## IV.    CONCLUSION

For the forgoing reasons, Defendants respectfully request that this Court dismiss this lawsuit for lack of personal jurisdiction, or in the alternative transfer this case to the Central District of California and order Plaintiffs to provide a more definite statement regarding their Lanham Act claims.

DATED: October 26, 2020
                                   Respectfully submitted,

Pillsbury Winthrop Shaw Pittman LLP

/s/ Casey Low
Ronald Casey Low
Texas State Bar No. 24041363
casey.low@pillsburylaw.com
Steven Tepera
Texas State Bar No. 24053510
Steven.tepera@pillsburylaw.com
401 Congress Avenue, Suite 1700
Austin, TX 78701-3797
Phone: 512.580.9600
Fax: 512.580.9601

*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify I caused a true and correct copy of the foregoing pleading to be served on all counsel of record electronically or by another manner authorized by Federal Rule of Civil Procedure 5(b)(2) on October 26, 2020.

/s/ Casey Low
Casey Low

11